WEBSTER M. SAMUELS AND ALEXANDER STREET AGT. THE CENTRAL OVERLAND CALIFORNIA AND PIKE'S PEAK EXPRESS COMPANY, BEN HOLLIDAY AND OTHERS.

*Corporation : By-Law : Mortgage : Sale : Trusts : Account : Equity : Practice.*

1. A by-law of a corporation is a mere rule for the government of the officers of the company in conducting their own business, and can have no effect upon the contracts of the corporation with other parties.

2. A deed of trust of personal property, executed in Kansas, must be governed by the laws of that state, in existence when the deed was made.

3. Under an act of the governor and legislative assembly of the territory of Kansas, entitled " An Act to provide for the foreclosure of mortgages," approved February 11, 1859, all mortgages and deeds of trust of personal as well as real property, were required to be foreclosed by proceedings in the courts under the civil procedure act.

4. A sale without a foreclosure in court, of personal property, by the trustees, under a deed of trust, executed by a corporation, while the said act was in force, is without authority, and in violation of the trust for which the trustees and the purchaser can be called to account in a court of equity, but the accounting must be made with the corporation, and jurisdiction over it is an indispensable requisite to any decree in the case.

5. A shareholder in a corporation can not come into a court of equity and assert against third parties rights which belong to the corporation, but which it declines to assert. The court, at the instance of a shareholder, can only apply preventive remedies for the protection of rights endangered by the neglect of directors and the threatened aggressions of others.

## BILL in Equity

*By the Court*—MILLER J.

This is a bill in equity brought by plaintiffs, as shareholders in the Express Company, mentioned in the caption, against that corporation and others, and especially against Ben Holliday.

The ground of their complaint is that, under pre-

tense of a deed of trust, made by the Express Company, to Robert L. Pease and Theodore F. Warner, the nominal purpose of which was to secure to Holliday certain sums of money advanced by him to the company, a sale was made to Holliday of property to the value of half a million of dollars, for the sum of $100,000. That said deed of trust was illegal, because unauthorized by the company; that if the deed was valid, the sale was void for want of due notice, and because it was in violation of the laws of the state of Kansas, and that both deed of trust and sale are void, on account of fraud on the part of Holliday.

The plaintiffs claim that they have a right to seek relief for these grievances in a court of equity, because the corporation of which they are stockholders has refused, although requested by them, to take any steps in that direction.

The relief prayed for is, that the deed of trust called a mortgage, may be decreed to be null and void, and the sale to be fraudulent and void, and set aside, and the property restored to the Express Company, and that defendants, except the Express Company, be restrained from proceeding further, selling or disposing of the property under the mortgage, and from using or in any way interfering with said property, and for such other and further relief as the nature of complainant's case may require.

It is very obvious that much of the specific relief here asked, is now impossible. It appears that the sale of the property under the deed of trust was made on the 22d March, 1862, and the bill in this case was filed July 7th, 1862.

The property was delivered to Holliday on the day of sale. No injunction or other order has been made concerning the custody of the property up to this time, now six years. That property consisted of horses, coaches, and other personal property appropriate to carrying the mail, and to the carrying business generally, over the route indicated by the name of the corporation. A decree to enjoin the use of that property, or for its restoration to the company, or to prevent interference with it, would be nugatory, because no such property can now be found.

But if the deed of trust should be declared void, or if the sale under it should be held to be invalid or fraudulent, it may, under some circumstances, be found that a liability exists on the part of Holliday or the trustees to account for said property, and we, therefore, proceed to inquire whether this, the only relief in the power of the court to administer, is sustained by the case made by plaintiff and by the rules of equity jurisdiction.

It is charged that the deed of trust is void, because the meeting of the board of directors, which, in July, authorized the president of the company to execute such an instrument, was held without the notice which the by-laws of the company prescribed. This point has been much urged in argument, but it is clear that it can not prevail.

1. The proof is sufficient to satisfy the court that such notice was given of the meeting as to be a substantial compliance with the by-law.

2. Such a by-law, being a mere rule for the govern-

ment of the officers of the company in conducting their own business, can have no effect upon the contracts of the corporation with other parties.

3. There is ample evidence of the ratification of the proceedings of that meeting by subsequent acts of the board of directors.

There are some objections taken in the bill to the terms of the deed of trust, but these were properly abandoned in argument.

We are, therefore, of opinion that the deed of trust is a valid instrument, and that the acts of the trustees in taking possession of the property, and conducting the operations of the Express Company, according to the terms of that instrument, were valid and proper.

But the objections to the sale are more formidable.

The Express Company owes its existence to the laws of Kansas, by which it was chartered. The deed of trust was executed, acknowledged and recorded at Atchison, in Kansas, which was then the principal place where its business was conducted. The property, all of which was personal, was located mainly in Kansas. The sale complained of was made at Atchison, in that state.

The contract itself, and the power given by the instrument, must be governed by the laws of that state, in existence when the contract was made. This was on the 22d day of November, 1861.

A statute, passed by the territorial legislature, February 11, 1859, was then in force, of which the following sections are part:

Sec. 1. That mortgages upon real estate, given to

secure the payment of money, shall be foreclosed by petition in the district court of the county in which the real estate is situated, or of the county to which the county in which the real estate is situated is attached for judicial purposes.

Sec. 2. All deeds of trust, given to secure the payment of money, shall be deemed mortgages within the meaning of this act, and shall be foreclosed in the same manner as mortgages on real estate are foreclosed.

Sec. 3. All proceedings to foreclose mortgages shall be conducted in conformity to the provisions of an act, entitled "An act to establish a code of civil procedure," passed at the present session of the legislative assembly.

Although the deed of trust in the case before us contains a clause authorizing the trustees to sell the property conveyed, in default of payment of the money it was intended to secure, it is claimed that no such sale could be lawfully made, because forbidden by the statute.

It is conceded that prior to the passage of this law, the equity of redemption in property, real or personal, conveyed by mortgage or deed of trust, which contained a power of sale, might be foreclosed by the exercise of that power without resort to a court of law.

It is also conceded that since this statute, neither deeds of trust nor mortgages of real estate can be foreclosed otherwise than by decree of a court. But it is denied that the provisions of this statute apply to mortgages or deeds of trust of personal property.

This construction is based upon the idea that the

first section has exclusive reference to mortgages of real estate, and to the manner of foreclosing them, and that the succeeding section, which speaks of deeds of trust, refers also to instruments alone which affect real estate.

If the language of the statute fairly construed can be satisfied with this exclusive application of it to deeds covering real property, the court will not be inclined to hold that the innovation, introduced by the law, was designed to go any further.

A close examination of the three sections of the act does not justify the idea that it was the main purpose of the first section to prohibit foreclosure of mortgages according to their terms, when they contained a power of sale, but rather to determine where the suit should be brought in cases affecting real estate when the party resorted to the court for a foreclosure, as he had a right to do, notwithstanding the power of sale. Such suits were, by this section, to be brought by petition, in the district court of the county where the land was situated, without regard to the residence of the defendants, or any of them.

And if the statute consisted of this section alone, I should hold that this was its only meaning, and that it did not intend to prohibit sales, even of real estate, when they were authorized by the terms of the mortgage.

The second section of the act has two obvious purposes: First, to place *all* deeds of trust on the same footing as mortgages, within the meaning of the act; and second, to require that they shall be foreclosed in

the same manner that mortgages of real estate are foreclosed. In construing this section, the proposition we are examining, requires us not only to disregard the word *all*, as affecting its meaning, but it requires us to interpolate the words, " upon real estate," after the words, deeds of trust. So that instead of reading, as it does in the statute, " all deeds of trust given to secure the payment of money," we shall read, " deeds of trust upon real estate, given to secure the payment of money." The difference in the meaning, is too clear for comment, and when the legislature, which had, in the previous section, made a provision, which was limited by its language, to " mortgages of real estate," drops that form of expression, when it comes to deeds of trust, and speaks of " all deeds of trust," it would be carrying judicial construction altogether too far to say, that by the latter phrase, they meant no more than by the former.

But it may be asked, if the first section does not prohibit foreclosure of mortgages by the exercise of the power of sale contained in them, how can such mode of foreclosure be forbidden to deeds of trust, which by the very terms of the second section, are to be foreclosed as mortgages of real estate are foreclosed ?

The answer is, that by the *third* section of the act, *all* proceedings to foreclose mortgages, must be conducted according to the provisions of the civil procedure act, that is, in court, and by judgment and judicial sale.

Taking the act altogether, it seems reasonably clear,

that it was the intention of the legislature to provide, that mortgages of *real estate* should be foreclosed by proceedings in the district court of the county where the land was situated.

2. That all deeds of trust, whether of real estate or personal property, should, for the purpose of foreclosing the equity of redemption, be placed on the same footing as mortgages of real estate.

3. That *all* foreclosures, whether of mortgages or deeds of trust, and whether covering real or personal property, should be by proceedings in the courts under the civil procedure act. It is very much to be regretted that no construction of this act has been had in the courts of the state, for we should gladly have followed such construction, if any had been made.

The sale, therefore, of the property of the Express Company, by the trustees, to Holliday, was without authority, and was a violation of their trust, for which they and Holliday, as purchasers, can be called to account in a court of chancery, which has special jurisdiction of trusts.

But with whom must this accounting be made? The equitable interest of the property was in the Express Company. The wrong done by the sale was to the damage of that company. While the legal title to the property was vested, by the deed, in the trustees, who, by the terms of the trust, had a right to take possession, the real ownership was in the corporation. This corporation is still in existence, as far as can be known from the record. It appears by the testimony in the case, that there are creditors of the

company, whose debts would much more than absorb any amount which could possibly be recovered of Holliday, and the trustees.

Holliday himself, has a large debt of over $200,000 against the company, which, in this settlement, he would have a right to deduct from the value of the property illegally converted by him, to his own use. Before any decree could be rendered against Holliday, there must be such parties before the court as would make the decree final.

The court can not render a decree against him, requiring him to account, and finally to pay over a large sum of money, and leave him liable, on the face of these proceedings, to a suit for the same matter to another plaintiff.

So the trustees have a right to claim, that if held responsible for the violation of their trust by the court, it shall see that they are not left liable to suit for the same matter, from a party, having a superior right, and not bound by the decree in this case. The party, and the only party who can make such a settlement, is the Express Company. If the creditors have an interest in the fund to be recovered from Holliday, and the trustees, the company represents that interest, and it must be worked out through that corporation. If the plaintiffs in this suit, have any such interest, it is still more clearly represented by the corporation, of which they are stockholders, in which right alone, they have any claim to be heard ; for it is only after the debts of the corporation are paid, that they have any equitable claim on the debts due the company,

and then only to a distribution in common with all the other stockholders.

The jurisdiction of this court over the Express Company as a party to this suit is, then, an indispensable requisite to any decree in the case. If a decree cannot be made binding on the company, no decree should be made at all, for the whole case would be left open to be litigated again at their instance, and to such a suit by the company, the present decree would be no bar.

That corporation is not before the court. It is true, that plaintiffs in their bill, make the company a defendant, but no process was served on the company, nor any appearance made for it. I have before me now, two subpœnas in chancery, issued at different times, in both of which, the Express Company is directed to be served, but in both instances, the officer returns that the corporation is not found within his district. The legal inference from this is, that no such corporation exists in the district of Kansas, and if it is not a citizen of Kansas, although it may have an existence elsewhere, it is not subject to the process of the court.

Nevertheless, there is good reason to believe, from certain testimony in the case, that the corporation still exists in the state of Kansas, and might yet be subjected to the process of the court. And it is entirely within the discretion of the court, to withhold any decree at present, and permit the plaintiffs to bring the defendant not served, before the court.

There are, however, reasons why this course should not be pursued in the present case :

1st.   The suit is brought by two stockholders, in behalf of themselves, and all the other stockholders who might come in and take part in the litigation.

During the six years that the litigation has been pending, no other stockholder has come forward.

The interest of plaintiffs in this litigation, is very small.   They own but 381 out of 10,000 shares.   And it is quite obvious, that if anything can ultimately be recovered in the suit, it must all go to the creditors of the corporation.

The real pecuniary interest of plaintiffs, amounts to nothing in the suit, beyond the costs.

2d. The plaintiffs conduct does not commend them to a court of equity.   It does not appear that any portion of the stock of the shareholders has been paid up.   The trustees held possession of the property sold under the deed of trust, for four months before the sale, during all of which time it was advertised for sale.   For part of this time, one of the plaintiffs was a director in the Express Company.   At any time before the sale, it might have been prevented by tendering the money due to Mr. Holliday, yet neither of the plaintiffs, nor the corporation, nor the directors, made any effort, either by assessments on the shares, or by any other means, to raise the money and prevent the sale.   To the present time, no offer to redeem has been made.

He who seeks equity, should do equity.   Yet now, without real pecuniary interest in the matter, they stir up a bitter and serious litigation, which the real party in interest declines to commence, or to participate in, when called on as a defendant.

3d. The complainants do not hold such a relation to the only relief which this court can give, as to enable them to prosecute the suit as plaintiffs.

This objection is fatal to the present suit, in any aspect it can be made to assume. The claim of a shareholder in a corporation to come into a court of equity, and assert against third parties, the rights which belong to the corporation, but which it declines to assert, has received, of late years, much consideration. There is also, beyond doubt, some conflict of authority on that subject. But the Supreme Court of the United States, whose authority is conclusive in this court, has gone as far in permitting the shareholder to interpose in such matters, as any other court, and if it has laid down principles, which exclude the plaintiffs here, from the relief sought by them, it is useless to look further for authority on the subject.

The case of Dodge agt. Woolsey, 18 Howard, 331, is, in some respects, analogous to the present one, and is the sole authority relied on by plaintiff's counsel, to sustain the right of plaintiffs to maintain this suit.

In that case, plaintiff was a stockholder in a bank, incorporated and doing business in the State of Ohio. The defendant, Dodge, was about to collect, by distress, certain taxes from the bank, which were illegal. The bank, though requested by the plaintiff, to take legal steps to prevent this, declined to do so, and the supreme court held, that plaintiff could maintain his suit against the collector, for an injunction, making the bank also a party. In coming to this conclusion, the court go into a full examination of the right of

15

plaintiff to maintain the suit, and cite authorities very fully on the question.

I think I am correct in stating that the propositions, supposed by the court to be established by their examination, may be thus stated :

1. That in the case of an incorporated company, with a capital stock divided into shares, and held by individuals, the corporation and the shareholder are distinct legal persons, and can sue and be sued by each other, when there is a cause of action.

2. That when the directors of a corporation have misapplied funds as a dividend, to which a shareholder has a distinct right, he can maintain a suit for such misapplication, or he can sustain a suit in equity to prevent, by injunction, such misapplication when it is threatened.

3. Where a third person is about to do some act to the corporation, or in reference to its rights or affairs, which the corporation itself might prevent by an injunction, or other preventive remedy, but the corporation refuses to take any legal steps for that purpose, a court of equity will permit the shareholder to institute, in his own name, such a suit against the third party and the corporation, and thus protect from immediate injury, his interest in the corporation.

But no case is cited, nor does anything, in the opinion of the court, go to the extent of asserting, that when a corporation has suffered by a tort, or been injured by a violation of contract, or has a right of action, legal or equitable, against any other person, the individual shareholder can come into court and

prosecute that cause of action, because the corporation fails or refuses to do so.

The court cites, and with approbation, the following language from Angell and Ames on corporations : " Though the result of the authorities clearly is, that in a corporation, when acting within the scope of, and in obedience to the provisions of its constitution, the will of the majority duly expressed, must govern ; but beyond the limits of the act of incorporation, the will of the majority can not make an act valid, and the powers of a court of equity may be put in motion at the instance of a single shareholder, if he can show that a corporation are employing their statutory power for the accomplishment of purposes not within the scope of their institution. But it is to be observed, that there is one important distinction between this class of cases and those in which there is no breach of trust but only error and misapprehension, or simple negligence on the part of the directors." And the court says, that we have here the rule and its limitation.

In the case before us, we have neither an attempt to transcend the powers of the corporation, nor any breach of trust on the part of the directors, but simply a neglect to bring a suit, which one of the stockholders believes ought to be brought. Again, the court says, that this jurisdiction of the court, at the instance of a shareholder is, to apply preventive remedies by injunction, to restrain those who administer them (the corporations), from doing acts which would amount to a violation of their charter. And this jurisdiction

extends to inquire into, and enjoin, as the case may require, any proceeding by individuals in whatever character they may prefer to act, if the subject of the complaint is an imputed violation of a corporate franchise, or denial of a right growing out of it, for which there is no adequate remedy at law.

We see here that the jurisdiction is confined, where other parties are concerned, to preventive remedies, to be used for the protection of rights endangered by the neglect of directors, and the threatened aggressions of others.

It would be a doctrine attended with very serious consequences, if any individual stockholder in a corporation could decide for the corporation, when suits should be brought to assert supposed rights, and, assuming the place of the corporation, use the courts to enforce his private views in opposition to the sense of the directors, and probably of all the other shareholders.

Every individual shareholder could thus be carrying on a separate suit against the corporation, and against the party supposed to have wronged it, and each one might elect to claim a different remedy, and resort to a different tribunal. In the meantime, the real interest of the corporation might be sacrificed in the struggle.

It would become dangerous to deal with corporations, for whatever the understanding with the lawful organs of the company, no one has protection from the individual shareholder.

If a stockholder is aggrieved by the refusal of the

board to adopt his views, his remedy is to unite with other stockholders in changing the directory. But if irreparable mischief to his interests may ensue in the mean time, equity will administer preventive justice until the will of the body of shareholders can be ascertained.

The Express Company not being a party to this proceeding, will be at liberty to assert any claim it may think proper, growing out of these transactions, and is manifestly the proper party to do so, if it is to be done at all.

ORDER.—The plaintiff's bill is therefore dismissed with costs.